NEW JERSEY MANUF'G Co. *v.* COOPER *et al.*

*(Circuit Court, D New Jersey.* January 10, 1888.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—NOVELTY—METALLIC BUTTONS.
   The first claim of letters patents, No. 216,973, of July 1, 1879, to Charles Radcliff, for "improvement in metallic buttons" is as follows: "A metallic button consisting of two disks, a crown and bottom piece, in combination with a wire placed between them, so formed as to fit and strengthen the periphery of said disks, and to act as the bar for the thread, substantially as and for the purpose described." *Held,* void for want of novelty; buttons formed of an upper and lower disk, with an intermediate wire thread-bar, viz., the glove button, the Woodbury button, the Hornish button, the Fernald button, and the Thalheimer button, having been old at the date of the patent.

2. SAME—WANT OF INVENTION.

In view of the prior state of the art, as evidenced by the glove button and the Woodbury, Hornish, Fernald, and Thalheimer buttons, letters patent No. 216,973. of July 1, 1879, to Charles Radcliff, for "improvement in metallic buttons," are void for want of invention; Radcliff having simply straightened the bar of the old glove button, and possibly exercised greater care in making its length correspond with the diameter of the disks, or straightened the bar of the Woodbury button and added a covering as suggested by the patent.

In Equity.

*Betts, Atterbury, Hyde & Betts,* for complainant.
*Whitehead, Gallagher & Richards,* for respondents.

BUTLER, J. The suit is for infringement of letters patent No. 216,-973, granted July 1, 1879, to Charles Radcliff, for "improvement in metallic buttons."

The defense is—*First,* want of patentable novelty; *second,* non-infringement. The specifications and claims of the patent, are as follows:

Be it known that I, Charles Radcliff, of the city of Newark, county of Essex, and state of New Jersey, have invented a new and useful improvement in metallic buttons, of which the following is a specification: The invention relates to buttons which are stamped out of metal sheets with dies. Heretofore metallic buttons have been made either of one piece of metal, or of two hollow metallic disks joined together by bending the edge of one disk over the other. The disadvantage of the former method was the weight of the button, and of the latter method its weakness. When such buttons were perforated, two semicircular eyes were usually made in the center of the button, leaving a part of the metal between them to form a bar for the thread. The edges of this bar had a tendency to cut the thread. My invention consists in inserting between the disks of a perforated metallic button a strengthening piece made of wire so formed or bent as to accurately fit the inside edge of the smaller disk, and forming a transverse bar across its diameter, said bar passing across the perforations in the center of the disks, and forming the bar for the thread; and the ends of the wire, which fit the inner edge of the disk, give strength to the periphery of the button. By this means I form a very strong and light button, and the transverse bar, being round and smooth, will not cut the thread. In the accompanying drawings, A. and B., Figs. 1, 2, and 3 are the metallic disks, perforated with one large round hole in each disk, instead of two semicircular ones, or several small round ones, as is usually the case. C, E, F, are different forms of the transverse thread-bar. I do not confine myself to any particular form of this transverse bar. The ends of the bar may be made of any suitable form from a bar perfectly straight through the shapes shown at E and C up to that shown at F, or it may be combined with a circular ring, which fits the inner edge of the disk. All these are obvious modifications of the same idea. I myself prefer the form shown at C, which furnishes all the requisite strength, combined with cheapness of manufacture. In Figs. 1 and 2 the disks are shown before the edges are bent over to clasp the disks together. D, Fig. 2, is a side view of the completed button, and Fig. 3, gives a top and bottom view of the completed button. What I claim is: (1) A metallic button consisting of two disks, a crown and bottom piece, in combination with a wire placed between them, so formed as to fit and strengthen the periphery of said disks, and to act as the bar for the thread, substantially as and for the purpose described. (2) In a metallic button consisting of two disks joined together, a transverse bar of round wire,

substantially in the shape shown at C, substantially as and for the purpose described.

The infringement charged is of the first claim only. Does the button there described embrace patentable novelty? It is "a metallic button, consisting of two disks, a crown and bottom piece, in combination with a wire placed between them, so formed as to fit and strengthen the periphery of said disks, and to act as the bar for the thread." The important element of this combination is the wire bar, whose office is to strengthen the periphery, and afford a thread-hold; nothing more is claimed for it. The former state of the art is illustrated by the glove button, the Woodbury button, the Hornish button, and the Fernald button. We say nothing at present of Thalheimer's. Buttons formed of an upper and lower disk, with an intermediate wire thread-bar, were old at the date of the patent. The bar was bent so that its center projected through the perforation in the lower disk, and formed a shank. In some instances it was held in place by the pressure of the disks alone, and in others was attached to thick, stiff paper, which received the pressure. In some instances, the ends of the bar extended to the periphery of the disks, and in others, especially where attached to paper, it was shorter; the paper, when used being cut to fit the disks. The complainant endeavors to distinguish his button from these, by pointing to the fact that in them the bar was bent at the center, while in his it is straight, and to the difference in its effect upon the periphery of the disks. We do not think the dissimilarity in the bar at the center, is important. It was formerly bent to afford greater convenience in applying the thread. Whether bent or straight, the button is essentially the same. Furthermore, the claim does not call for a straight bar at the center, and certainly covers a crooked one. If such had not previously been employed, the complainant would undoubtedly regard its use as an infringement. To say that such buttons belong to a different class, that they are shank buttons, and the others bar buttons, signifies nothing material to the inquiry. Nor do we see anything important in the alleged difference in effect upon the periphery. In the glove button before us the ends fit the disks as closely as in that of the complainant, and strengthen the periphery sufficiently for practical purposes. It might not bear as much pressure as the complainant's at the ends of the wire; but the difference is only in degree, and is therefore immaterial. (It is indeed difficult to see how the complainant's straight bar—shown in Fig. E of his draught—is of any essential value in strengthening the periphery. Of course it adds strength at the point of contact, but as this leaves probably nine-tenths of the entire extent unsupported, it can be of little importance.) The Hornish and Fernald buttons, with their intermediate paper disks and attached wire bars, also have the disk support. It may not bear great pressure, but it extends to the entire circumference. The support here, it is true, is not derived from the wire alone. The plaintiff, cannot, however, rely upon this to distinguish the button from his, for the same difference exists in the respondents' button, the alleged infringement. The Woodbury button (as shown by the draught, and the exhibit "Wood-

bury Button") has quite as good a periphery support as the complainant's. Indeed, when the wire constituting the thread-bar and periphery of this button is inclosed within the disks, it is difficult, if not impossible, to distinguish it from the complainant's, even in form, except that the bar is bent at the center, which, as we have seen, is immaterial. Woodbury's patent contemplates and suggests a covering for the wire, and this of course may be of the metallic disks then in use, or other material. The Thalheimer button is identical with the complainant's even in form, its thread-bar is straight, and the ends fitted to the periphery. While Mr. Thalheimer testifies very positively to its manufacture prior to the date of complainant's patent, a question is raised respecting his accuracy. The view we entertain renders a decision of this question unnecessary. If the complainant was not actually anticipated, it is very clear, we think, that what he did does not embrace invention. He simply straightened the bar of the old glove button, and possibly exercised greater care to make its length correspond with the diameter of the disks, or straightened the bar of the Woodbury button, and added a covering, as suggested by that patent. The testimony and argument directed to the points of cheapness, lightness, and strength (elsewhere than at the periphery) are aside of the question involved.

As we hold the claim to be invalid, the question of infringement need not be considered. The bill must be dismissed with costs.